# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **FOUNDATION BUILDING MATERIALS, LLC,** | **Case No.: SACV 21-01804-CJC(KESx)** |
| **Plaintiff,** | |
| **v.** | **ORDER REMANDING ACTION TO ORANGE COUNTY SUPERIOR COURT** |
| **ACTION GYPSUM SUPPLY, *ET AL.*** | |
| **Defendants.** | |

## I. INTRODUCTION

On February 3, 2022, the Court issued an order to show cause as to why this action, which involves only state law claims and features non-diverse opposing parties, should not be remanded to Orange County Superior Court.  (Dkt. 23 [Order to Show Cause].)  Defendants Action Gypsum Supply ("AGS Texas"), Action Gypsum Supply

West, LP ("AGS West") (collectively, "AGS"), Frank Nava ("Nava"), Dino Casillas ("Casillas"), Tom Jordan ("Jordan"), Chris Olson ("Olson"), Mathew C. Jung ("Jung"), Israel Valdez ("Valdez"), Jose Ramos ("Ramos"), and Jesus Bustillos ("Bustillos") filed a response to the Order to Show Cause opposing remand.  (Dkt. 25 [Defendants' Response Opposing Remand, hereafter "Defs. Resp."].)  Plaintiff Foundation Building Materials, LLC filed a response supporting remand.  (Dkt. 26 [Plaintiff's Response Supporting Remand].)  For the following reasons, the Court **REMANDS** this action to Orange County Superior Court.[1]

## II.    BACKGROUND

Plaintiff's Original Complaint was filed solely against AGS Texas in Orange County Superior Court on August 18, 2021. (Dkt. 1-1 [Original Complaint].)  Plaintiff filed an Amended Complaint in state court on September 1, 2021. (Dkt. 1-2 [Plaintiff's First Amended Complaint].)  On October 29, 2021, AGS Texas removed the action to this Court. (Dkt. 1 [Notice of Removal].)  AGS Texas removed the action based on the Court's diversity jurisdiction, explaining that it is a citizen of Texas and Plaintiff, an LLC whose sole member resides in California, is a California citizen. (*Id*. at ¶¶ 15-17.)

On November 19, 2021, AGS Texas filed a motion to dismiss Plaintiff's entire case.  (Dkt. 12 [First Motion to Dismiss].)  Plaintiff's counsel filed a declaration along with Plaintiff's opposition that explained the procedural history of this case.  (Dkt. 15-1 [Declaration of Ashley A. Halberda, hereafter "Halberda Decl."].)  When Plaintiff originally filed its complaint in state court on August 18, 2021, it errantly left out the second and third pages of the Original Complaint.  (*Id*. ¶¶ 2-3.)  Plaintiff attempted to submit the complete version of its Original Complaint on August 20, 2021, but the court

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 21, 2022 at 1:30 p.m. is hereby vacated and off calendar.

rejected the filing and ordered Plaintiff to submit the Original Complaint as an Amended Complaint.  (*Id*. ¶¶ 4-5.)  Plaintiff thereafter filed its First Amended Complaint, which was just the complete version of its Original Complaint.  (*Id*. ¶ 6.)  On September 29, 2021, Plaintiff filed a Second Amended Complaint in state court that named several individual defendants who are California residents.  (*Id*. ¶ 7.)  However, on September 30, 2021, the state court rejected the filing because Plaintiff had already filed a First Amended Complaint and needed to seek leave of court before filing the Second Amended Complaint.  (*Id*. ¶ 8.)  On October 15, 2021, Plaintiff filed an *ex parte* application seeking the state court's leave to file the Second Amended Complaint.  (*Id*. ¶ 9.)  The state court denied the application because Plaintiff failed to include a copy of the proposed Second Amended Complaint with the application.  (*Id*.)  Between October 18 and October 29, 2021, Plaintiff tried to get AGS to stipulate to Plaintiff's filing of the Second Amended Complaint.  (*Id*. ¶ 10.)  On October 29, 2021, AGS refused to stipulate and removed the action to this Court that same day.  (*Id*. ¶ 11; Notice of Removal.)

In its opposition to the First Motion to Dismiss, Plaintiff requested leave to amend to file the Second Amended Complaint.  (Dkt. 15 [Plaintiff's Opposition to AGS Texas' Motion to Dismiss].)  The Court granted AGS Texas' motion, noting several deficiencies in Plaintiff's First Amended Complaint, but granted Plaintiff leave to amend.  (Dkt. 17 [Order Granting Motion to Dismiss with Leave to Amend].)  Plaintiff filed the Second Amended Complaint on January 14, 2022.  (Dkt. 18 [Second Amended Complaint, hereafter "SAC"].)  In it, Plaintiff alleges various state law causes of action, including intentional and negligent interference with prospective economic advantage, intentional interference with contract, violation of California's Unfair Competition Law, conversion, and trespass to chattels.  (*Id*.)  The Second Amended Complaint joins a number of non-diverse defendants, including Nava, Casillas, Jordan, Olson, Valdez, Ramos, and Bustillos, who are all alleged to be residents of California.  (*Id*. ¶¶ 4-7, 9-11.)

### III.      LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted).  By statute, federal courts have diversity jurisdiction over suits where more than $75,000 is in controversy if the citizenship of each plaintiff is different from that of each defendant.  28 U.S.C. § 1332(a).  If at any time before final judgment, the court determines that it lacks subject matter jurisdiction, the action shall be remanded to state court.  28 U.S.C. § 1447(c).

Under 28 U.S.C. section 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  Whether to permit joinder of a party that will destroy diversity remains in the sound discretion of the district court.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998); *see also Walker v. Glob. Mail, Inc.*, 2021 WL 4594024, at *2 (C.D. Cal. Oct. 6, 2021) ("District courts have broad discretion in considering whether to permit a plaintiff to join a non-diverse party under section 1447(e).").  In exercising this broad discretion, courts typically consider six factors: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.  *See McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 607 (S.D. Cal. 2014); *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000).

## IV.    DISCUSSION

The posture of this case is a bit peculiar.  Ordinarily, the Court would perform the section 1447(e) analysis on a plaintiff's motion to amend the complaint to join a non-diverse defendant.  However, Plaintiff couched a curt request for leave to amend in its opposition to AGS Texas' motion to dismiss.  (Dkt. 15 at 14.)  The Court granted the request without knowing that Plaintiff planned to join non-diverse parties.  Plaintiff should have made clear that its proposed amendments would destroy diversity so that the Court could have conducted its section 1447(e) analysis in the first instance.  Instead, the Court must conduct a post-hoc section 1447(e) analysis, after the Second Amended Complaint has already been filed.

The Court will limit its analysis to the joinder of Valdez, as the allegations against Valdez are the most detailed and because joinder of even one non-diverse defendant is enough to divest this Court of diversity jurisdiction.  The Court takes each factor of the section 1447(e) analysis in turn below.

**A.     Necessary Parties Under Rule 19(a)**

A "necessary party" under Federal Rule of Civil Procedure 19 is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it."  *See CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 805, 912 (9th Cir. 1991) (citation omitted).  "Although courts consider the standard set forth in Rule 19 in determining whether to permit joinder under Section 1447(e), amendment under [Section] 1447(e) is a less restrictive standard than for joinder under Rule 19."  *Avellanet v. FCA US LLC*, 2019 WL 5448199, at *2 (C.D. Cal. Oct. 24, 2019) (alterations in original) (internal quotations omitted).  The standard for joinder under section 1447(e) "is met when failure to join will lead to separate and redundant actions."  *IBC Aviation Servs.*, 125 F. Supp. 2d at 1011 (*citing CP Nat'l*, 928 F.3d at 910).  In contrast, the joinder of non-diverse defendants is not necessary "where those defendants are only tangentially related to the cause of action or would not prevent complete relief."  *Id*. at 1012.

Plaintiff alleges that Valdez was one of its management-level employees (a "Product Manager for Southern California") but now works for AGS.  (SAC ¶ 21.)  Plaintiff alleges that while it employed Valdez, he acted in concert with AGS' management employees to assist AGS in recruiting Plaintiff's employees.  (*Id*.)  Valdez allegedly helped AGS by divulging the confidential salary information of Plaintiff's employees, information Valdez was only aware of through his managerial role with Plaintiff.  (*Id*.)  Plaintiff further alleges that Valdez, while still employed by Plaintiff, sold "over $45,000 worth of [Plaintiff's] products to AGS that were on allocation due to their scarce availability[.]"  (*Id*.)  Plaintiff alleges that "[a]s a result of this unauthorized sale, [Plaintiff] was unable to provide its customer base with these in-demand products during

a critical time in the market, and these customers were then forced to seek these products and related project services from another provider—including AGS." (*Id.*)

Valdez shares far more than a tangential relationship with Plaintiff's claims against AGS. Indeed, his conduct serves as one the main bases for Plaintiff's claims against AGS. It was through Valdez's alleged assistance and position of trust with Plaintiff that AGS allegedly interfered with Plaintiff's customer and employment relationships. Not allowing Plaintiff to join Valdez would certainly lead to redundant actions, *see IBC Aviation Servs.*, 125 F. Supp. 2d at 1011, given how intertwined his alleged conduct is with that of AGS. This factor weighs in favor of joinder.

## B.    Statute of Limitations

Plaintiff does not argue that the statute of limitations would bar it from filing any of its claims against Valdez in state court. This factor weighs against joinder.

## C.    Timing

The Court finds this factor to weigh in favor of permitting joinder. Plaintiff has been trying since September 29, 2021—when this action was still in state court and roughly one month after the Original Complaint was filed—to file the Second Amended Complaint. (*See* Halberda Decl.) Of course, it was Plaintiff's own fault—through a series of technical failures—that the Second Amended Complaint was not on file before AGS Texas removed the action. And, despite Plaintiff's intimations, the Court finds nothing untoward with AGS Texas' decision to remove the action when it did. But Plaintiff can hardly be said to have unduly delayed in seeking to join non-diverse defendants like Valdez when it has been making an effort to do so since September 2021.

**D.    Motive**

This factor also weighs in favor of permitting joinder.  The Court does not suspect that Plaintiff is acting with the sole motive of defeating diversity jurisdiction.[2]  Again, Plaintiff promptly attempted to join the non-diverse individual defendants while this action was still in state court, rather than in response to removal.  Further, several courts in this circuit have noted that a plaintiff's motive is not an important factor in the section 1447(e) analysis.  *Viveros*, 2021 WL 5989365 at *6 ("The legislative history to § 1447(e) also suggests that it was intended to undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion."); *Reyes*, 2020 WL 7224286 at *6; *Malijen*, 2020 WL 5934298 at *3.  Courts have also found that an assessment of a plaintiff's motive is closely intertwined with an assessment of the validity of the plaintiff's claims against the proposed defendant.  *Malijen*, 2020 WL 59344298 at *4 ("[A]ny bad faith evidenced by the delay in adding Proposed Defendants is outweighed by the facial legitimacy of Plaintiff's proposed claim."); *Dordoni*, 2020 WL 6082132 at *5; *Viveros*, 2021 WL 5989365 at *6.  As discussed below, the Court finds that Plaintiff has raised valid claims against Valdez.

---

[2] Defendants argue that Plaintiff has the improper motive of "chilling legitimate competitive activity and employee mobility" by joining the individual defendants.  (*See* Defs. Resp. at 14.)  Defendants cite no case in which a court has considered motivations other than the motivation to defeat jurisdiction.  Even so, the Court finds Defendants' argument speculative.  Valdez is accused of misappropriating $45,000 worth of Plaintiff's inventory and selling it to AGS.  If that is true, AGS and Valdez were not engaged in legitimate competitive activity.  (SAC ¶ 21.)

1

2    **E.     Validity of Claim Against Valdez**

3

4         "For the purposes of joinder under § 1447(e), a plaintiff's claim need only be

5    facially viable—the claim need not be plausible nor stated with particularly." *Reyes*,

6    2020 WL 7224286 at *8 (*citing Dordoni*, 2020 WL 6082132 at *5). "In considering the

7    validity of [a] plaintiff's claims, the [c]ourt need only determine whether the claim seems

8    valid which is not the same as the standard in either a motion to dismiss or a motion for

9    summary judgment."[3] *Viveros*, 2021 WL 5989365 at *6 (internal quotations and citations

10   omitted). Put another way, "merely a glimmer of hope that plaintiff can establish [a]

11   claim is sufficient[.]" *Marin*, 2021 WL 5232652 at *3 (internal quotations and citations

12   omitted).

13

14        There is certainly a glimmer of hope that Plaintiff may establish Valdez's liability

15   for the claims it has brought against him. In sum, Valdez is alleged to have funneled the

16   confidential salary information of other employees of Plaintiff to AGS while Plaintiff

17   employed him in a management-level position. (SAC ¶ 21.) He is also alleged to have

18   sold to AGS, Plaintiff's direct competitor, $45,000 worth of Plaintiff's products that were

19   on allocation, without seeking prior approval, and despite knowing Plaintiff's policy

20   "strictly prohibited" "large sales of products on allocation (especially sales to a direct

21   competitor)." (*Id*. ¶ 22.) Valdez allegedly effectuated this unapproved, large sale to AGS

22   just hours before leaving Plaintiff to go work for AGS. (*Id*.) Plaintiff alleges that this

23   resulted in a loss of sales of those products to its customers. (*Id*.)

24

25        "The elements of interference with prospective economic advantage . . . are: (1) an

26   economic relationship between the plaintiff and some third party, with the probability of

27   future economic benefit to the plaintiff; (2) the defendant's knowledge of the

28

---

[3] Defendants miss the mark here, arguing under the Federal Rule of Civil Procedure 12(b)(6) standard.
(*See* Defs. Resp. at 15-18.)

relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."[4]   *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107-08 (9th Cir. 2007) (internal citations and quotations omitted).   "[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself."   *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392–93 (1995) (internal quotations and citations omitted).

There is more than a mere "glimmer of hope" that Plaintiff can establish these elements with respect to Valdez.   His alleged conduct—misappropriating his employer's property and selling it to a competitor—is wrongful on its own, independent of the alleged interference.   It is plausible that a management-level employee like Valdez would have been well aware that those products were intended for Plaintiff's customers, not its competitors.   And it is no stretch to imagine that Plaintiff would suffer economic harm from an unauthorized sale to its competitor of products intended for its customers. Suffice to say, there is some chance that the allegations in the Second Amended Complaint could support Plaintiff's tortious interference claims against Valdez.   *See Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966); *see also GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 416-423 (2000) (*disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004)).

---

[4] The tort of negligent interference with prospective economic advantage is slightly different, requiring a plaintiff show that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship."   *See N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997).

**F.     Prejudice to Plaintiff**

The final factor weighs in favor of joinder because "[i]f the Court were to deny plaintiff's motion for leave to amend, plaintiff would be required to pursue two substantially similar lawsuits in two different forums—an action against [AGS] before this Court and an action against [Valdez] in California state court."  *Malijen*, 2020 WL 5934298 at *5 (internal quotations and citations omitted).

\\
\\
\\
\\
\\
\\
\\

**V.     CONCLUSION**

For the foregoing reasons, the balance of the section 1447(e) factors favor Plaintiff. Accordingly, joinder of the nondiverse defendants is appropriate and the Court lacks diversity jurisdiction over this case.  The Court **ORDERS** this case remanded to Orange County Superior Court.

DATED:     March 8, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE